REALTY BOARD INVESTORS, INC., v. OLIVER.

(Decided February 11, 1929.)

*Messrs. Fackler & Woods,* for plaintiff in error.
*Messrs. Henderson, Quail, McGraw & Morgan,* for defendant in error.

VICKERY, J. This cause comes into this court on a petition in error to the municipal court of the city of Cleveland, the purpose being to reverse a judgment rendered against the plaintiff in error in the court below.

From the record, arguments of counsel, and briefs, we learn that prior to April 1, 1923, the plaintiff in error and the defendant in error, May Lockwood Oliver entered into a 99-year lease, whereby the plaintiff in error leased a parcel of real estate on Euclid avenue owned by the defendant in error for the full term of 99 years, at a flat rental of $4,500 per year, and the lease contained a provision that the plaintiff in error, defendant below, the lessee, was to erect a building upon said premises to cost

not less than $30,000, within five years from the beginning of this lease, or on or before April 1, 1928. The lease further provided that the plaintiff in error, as lessee, was to pay all taxes and other assessments against said property, thenceforth to be levied and assessed.

To insure the provisions of this lease and the terms thereof, the plaintiff in error procured a bond in the penal sum of $15,000 from the Maryland Casualty Company for the faithful performance of this contract, and the bond contained a provision that if the plaintiff in error, as lessee, failed to erect a building on the premises on or before April 1, 1928, then the lessor could demand as liquidated damages the full penal sum of this bond, less any amounts that had been paid on the bond prior to that time, to make up any default that had accrued prior to that time, and that the $15,000 paid as such liquidated damages should discharge the plaintiff in error, as lessee, from the further liability of erecting said building upon said property.

The plaintiff in error, the lessee, went into possession and paid the rent up to the 1st day of April, 1928. It had not erected the building as provided for in the contract of lease and in the bond. The plaintiff below, the lessor, made no attempt to declare a forfeiture—if she could have done so—nor was there any demand made for liquidated damages for the non-erection of the building.

Subsequent to April 1, 1928, under the terms of the contract of lease, further sums of rent became due, and taxes and penalties became due upon this property, which were paid by the plaintiff below, the lessor, and an action was brought against the

lessee, plaintiff in error, to recover such sums, and that was the cause of action which was filed in the municipal court, for which judgment was rendered. After service of summons upon it the defendant, plaintiff in error here, filed an answer and tendered in court, although not demanded of it, the sum of $12,750, which was the unconsumed portion of the bond, as it asserted, claiming that $2,250 had been paid to cover the prior defaults, and at the same time it tendered a quitclaim deed conveying the property back to the plaintiff below, and asked to be discharged from further liability. After hearing this case, the court decided in favor of the plaintiff, and, as already stated, it is to reverse that finding that error is prosecuted here.

The proposition stated, which plaintiff in error undertakes to maintain, is a curious one, for if it were acknowledged to be the law, any person with a 99-year lease could fail to comply with his contract and then go into a court and set up his own wrong and thus avoid responsibility on a 99-year lease, or any other kind of lease. We do not so understand the law.

We think that this contract of lease and the bond should be construed together as one document, and in construing them together one can readily see the purpose of this bond. Undoubtedly the bond did secure the payment of the rent until the expiration of five years, but that could not have been the only purpose of the bond, for if the lessee had failed to pay the first year's rent, and the lessor had forfeited the lease, we hardly think it could be claimed that the lessor accepting the property after such forfeiture could recover the $15,000 liquidated dam-

ages. There was a purpose why this bond was to run five years.

Now it must be remembered that this was a long-term lease, 99 years, at a flat rental of $4,500 a year and a payment of taxes and other things—penalties, if there were any. In order to insure good faith, the lease provided that within five years the lessee was to erect upon this property a building to cost not less than $30,000, and that this building must be turned over in case of a forfeiture of the lease, free and clear from all incumbrances and liens, to the defendant in error, the lessor, and the bond was given not only to secure the rent, but to secure the performance of the erection of this building free and clear from all incumbrances, and if that building had been built at any time within the five years and had been free from liens, and the ground rent had been all paid up to the 1st day of April, 1928, the Maryland Casualty Company could have demanded the return of its bond and an exemption from any liability, for there would have been none. If the lessee did not erect a building within that time, the plaintiff would have no security whatever for the rentals of this property except the bond.

The bond contains this provision: "And if the said building shall not be so erected and completed in all respects in accordance with the requirements of the said lease, the said principal and the said surety shall, at the expiration of the time so fixed therefor, promptly pay to the lessor, her heirs, personal representatives and assigns, as liquidated damages, upon their demand, the sum of fifteen thousand dollars ($15,000.00), or such part thereof as shall not have been already paid on account of prior defaults under the said lease."

This indicates beyond any equivocation or doubt that this clause relating to liquidated damages was to be in lieu of the erection of this building by the lessee in accordance with the terms of this contract, and the bond is very careful to limit the liability of the surety company, and therefore of the principal likewise, upon the non-erection of this building, to the same statement in the clause of the bond referring to liquidated damages. Now if the plaintiff below, the lessor, had received from the surety company in a defaulting for rent a sum which impaired the obligation of this bond, the penal sum of the bond would, of course, mark out and limit the liability of the surety company, and if plaintiff had accepted a portion of this before, she could not increase the liability of the bond. Therefore, that clause of the bond which relates to the liability of the bonding company and the principal to pay any amount of the penal sum not already expended is explainable and is perfectly proper.

Of course, the contract of lease is a long, complicated instrument; but taking it in connection with the bond there can be no doubt as to what the parties intended this contract to mean. When April 1, 1928, had arrived and the building had not been erected, the bonding company became liable for any sum that was still remaining due on that bond, as liquidated damages, and the liability of the lessee to erect a building upon that property ceased, for the plaintiff would be compelled to accept in lieu thereof the liquidated damages in the sum of $15,000. After this bond had been paid, of course, there would be no further security for the payment of rent except the liability of the lessee, but that was in no manner lessened by paying the money instead

of erecting the building; for if the building had been erected, and it had been turned over free and clear from incumbrances, the bond would have been discharged, but the lease would have been running just the same, and the rights of the parties would be the same, and if there was a forfeiture declared after that time by the lessor against the lessee for the non-fulfillment of the terms of its contract of lease, the lessor would have had, not the $15,000, but the building itself, under the terms of the 99-year lease. And so, how a lessee, when there has been no forfeiture declared, when only a part of the contract with which the lessee was to comply has been fulfilled by the payment of $15,000, instead of the erection of the building, how that can be regarded as terminating this lease, it is a little difficult to see.

Is it possible that we have our law in such a condition that a party to a contract can set up his own default to escape further liability? It must be remembered that the courts do not make contracts for parties. If parties will insist upon making foolish contracts, they cannot expect a court, especially a court of law, to relieve against them. Undoubtedly in 1923, when this lease was taken—for it was taken by men who are acquainted with the values of property on Euclid avenue and in Cleveland—these men unquestionably thought that they were getting a good bargain, and now, simply because there has been a turn in the wheel of fortune, and real estate has gone down instead of up, is that any reason why the lessor should lose the advantage of the contract that was made by her against these keen real estate men of Cleveland, who failed

to guess right as to what the ultimate value of this property would be? We think not. It may be possible that if these men, comprising this plaintiff in error company, had not made this lease, some other concern would have leased it of the plaintiff below, the defendant in error here, and to deprive this plaintiff of a chance to make a contract with persons who perhaps would not try to get out of it when the results were not as favorable as they had anticipated, would be wrong.

This 99-year lease provides, without any equivocation or doubt, that this rent and the taxes were to be paid by the plaintiff in error, the lessee, for the full period that the lease was to run, and nothing short of complying with this contract, or of a forfeiture upon the part of the plaintiff below, whereby she terminated this lease and took possession of the property, would release the defendant from this obligation. Such are the terms of the contract of lease itself that, if she should declare a forfeiture of this lease and take possession, she could collect the rents and taxes that were due up to that time, but from that time on there would be no further liability. Now there is not one particle of evidence in this record to the effect that there ever was a declaration of a forfeiture by the plaintiff below of this lease, but, on the other hand, there is much evidence to the contrary. There never was even a demand for the payment of the liquidated damages, although, in our judgment, on April 1, 1928, plaintiff had the right to institute such a suit against the bonding company and the principal to recover this $15,000, and it would in no wise affect the balance of the term of this lease. It was simply a waiving

of the erection of a building upon this property, and the acceptance in lieu thereof of the $15,000 mentioned as liquidated damages. The plaintiff might well have waived her rights to the erection of the building. She might well have waived her rights to the $15,000, and could have insisted, if the defendant was financially responsible, that they pay this rent.

A person who has entered into a contract voluntarily, without any fraud or collusion, but has simply used bad judgment, cannot deprive the other party of the benefits of her contract by offering to turn the property back and quitclaiming his interest in this property. If that were the law to be established, no lessor would be safe for a single instant in making contracts with lessees, unless the lessee got the best of the contract. If the lessee got the best of the contract, the lessor would be compelled to live up to it; but, if the lessor got the best of the contract, the lessee, by his own wrong, by his own misconduct, could insist upon a forfeiture and set his own wrong up to escape responsibility. One has only to state the proposition to show how utterly absurd it is.

The court below was absolutely right in rendering his judgment, and the case will therefore be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.